UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN MASTREY, | ) Case No. 1:17CV1984 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) <u>MEMORANDUM AND ORDER</u> |

Plaintiff Stephen Mastrey ("Mastrey" or "claimant") has challenged the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The issue before the court is whether the final decision of the Commissioner is supported by substantial evidence and, therefore, conclusive. For the reasons set forth below, the Commissioner's final decision is affirmed.

## I. PROCEDURAL HISTORY

On February 13, 2014, claimant protectively filed an application for DIB, alleging disability beginning November 27, 2013. (R. 10, Transcript ("tr."), at 20, 181-182, 206-216.) He listed the physical or mental conditions that limit his ability to work as "classic migraine with aura, hypertension, and lumbar spondylosis." *Id.* at 209. Claimant's application was denied initially and upon reconsideration. *Id.* at

96-106, 107-117, 120.  Thereafter, claimant filed a request for a hearing before an administrative law judge ("ALJ").  *Id.* at 137.

The ALJ held a hearing on January 14, 2016.  (R. 10, tr., at 35-87.)  Claimant appeared at the hearing, was represented by counsel, and testified.  *Id.* at 37, 40-72.  A vocational expert ("VE") attended the hearing and provided testimony.  *Id.* at 72-84.  On August 29, 2016, the ALJ issued the underlying decision and concluded claimant was not disabled.  *Id.* at 20-29.  On August 13, 2017, the Appeals Council denied Mastrey's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.   *Id.* at 1-3.

On September 21, 2017, Mastrey filed a complaint challenging the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.  Mastrey presents three legal issues: 1) challenging the weight the ALJ assigned to the treating physician opinions, 2) asserting the ALJ erred by not performing a proper pain analysis, and 3) challenging the ALJ's residual functional capacity assessment. (R. 13, PageID #: 505.)

## II.  PERSONAL BACKGROUND INFORMATION

Mastrey was born on September 22, 1955, and was 58 years old on the alleged disability onset date.  (R. 10, tr., at 28, 41, 181.)  He has a high school education and is able to communicate in English.  (R. 10, tr., at 28, 208, 210.)  Mastrey had past work as real estate appraiser, and a hauler.  (R. 10, tr., at 27, 44-46, 73-74.)

# III. RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Mastrey's brief alleging error by the ALJ. As noted earlier, Mastrey applied for DIB benefits on February 13, 2014, alleging disability beginning November 27, 2013. (R. 10, tr., at 20, 181-182, 206-216.) He stated that he was totally disabled from performing substantial gainful activity due to "classic migraine with aura, hypertension, and lumbar spondylosis." *Id.* at 209.

A lumbosacral spinal x-ray on April 29, 2013, for back pain revealed Mastrey had "mild to moderate multilevel degenerative changes of the lumbar spine without osseous injury evident." (R. 10, tr., at 339.) Another x-ray that same date for bilateral hip pain showed mild degenerative changes in the hips. *Id.* at 340.

On August 21, 2013, Mastrey presented to Matthew Pawlicki, M.D., with a history of migraine headaches, "with significant worsening in the past 2-3 years," triggered by bright lights, prolonged concentration, and computer work, that were interfering with his ability to work. (R. 10, tr., at 317-319.) The patient was alerted and oriented, and in no acute distress. *Id.* at 318. The doctor ordered a neurology consult, changed Mastrey's medication for hypertension (due to side effect of fatigue), and prescribed Imitrex tablets, to take at the first sign of a migraine, along with ibuprofen or Excedrin. *Id.* at 319.

---

[1] The summary of relevant medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

On September 16, 2013, Mastrey saw Mark Rorick, M.D., for a consultative neurological evaluation. (R. 10, tr., at 248-252, 312-316 (duplicate).) The claimant's pain was in the frontal region, and radiated to both eyes, but did not radiate to the ears, jaw, teeth, neck or other areas. *Id.* at 248. It was described as "a tight band, pressure, aching and increasing throughout the day, but not throbbing, not stabbing and not burning." *Id.* The preceding event to the onset of the headaches was stress and strenuous activity. *Id.*

On physical examination, Dr. Rorick assessed Mastrey was in no acute distress; he was oriented to person, place, and time; his recent and remote memory were intact; and, he had normal attention span and ability to concentrate. (R. 10, tr., at 251.) The claimant's motor exam was normal, his muscle tone and muscle strength were normal, and his coordination was normal. *Id.* Dr. Rorick's impression was that Mastrey had "likely muscle contraction/tension headaches" that were chronic and appear to increase with concentrating and tension. *Id.* The doctor suggested an MRI, but the claimant declined. *Id.* at 251-252.

The doctor reported to Mastrey, "Your headaches appear to be muscle contraction tension type. Learning to control your tension may help reduce headaches. If you would like to try a medication I suggest a trial of low dose amitriptyline or gabapentin." (R. 10, tr., at 252.) Dr. Rorick noted that if claimant began medication, he should have a follow-up appointment. *Id.*

On November 7, 2013, Mastrey appeared for a follow-up visit with Dr. Pawlicki concerning his hypertension and headaches. (R. 10, tr., at 303-307.) Dr.

Pawlicki noted that Mastrey's blood pressure had improved with medication. *Id.* at 303. In addition, his headaches "have largely improved, he noticed some improvement with alenolol but never tried topamax or amitriptyline," nor Imitrex. *Id.* Mastrey identified several triggers for his headaches: intense concentration, bright lights, especially during night driving, and focusing on a moving object. *Id.* On examination, the claimant's vital signs were stable, and he was alert and oriented, in no acute distress. *Id.* at 305.

Dr. Pawlicki's diagnosed classic migraine (with aura), hypertension, anxiety, and hypercholesterolemia. (R. 10, tr., at 307.) The doctor noted that Mastrey's frequent debilitating migraines were interfering with his ability to work, and that Dr. Rorick had diagnosed them "as tension type headaches and not migraine." *Id.* To clarify the source of claimant's symptoms, Dr. Pawlicki referred him for further testing. *Id.*

An MRI of claimant's brain on November 14, 2013, showed no signs of a stroke or tumor. (R. 10, tr., at 255, 337-338.) There were indications of a possible mastoid infection, "which is like a sinus infection of the ears." *Id.* at 337.

On November 19, 2013, Michael D. Gaugler, M.D., an ENT specialist, saw Mastrey on referral from Dr. Pawlicki. (R. 10, tr., at 261-262.) After examination, Dr. Gaugler diagnosed Classical Migraine Headache, with no ENT source. *Id.* at 262. The doctor did not find any clinical signs or symptoms to suggest inner ear pathology or mastoiditis. *Id.* Dr. Gaugler recommended treatment with preventive medicine. *Id.*

On February 12, 2014, Mastrey visited Dr. Pawlicki complaining of worsening symptoms (vertigo and headache) over the previous several days. (R. 10, tr., at 299-302.) Motrin (ibuprofen) and rest had helped his symptoms, but Dr. Pawlicki noted: "He has never tried [I]mitrex even though I recommend this every time he is here." *Id.* at 299. Dr. Pawlicki stated that claimant's hypertension was well-controlled, and recommended continuing Lipitor to control his high cholesterol. *Id.* at 301. Dr. Pawlicki noted that claimant's frequent debilitating migraines were interfering with his ability to work. *Id.* He recommended that claimant take four ibuprofen (200 mg each) for his headaches, with Imitrex. *Id.* Dr. Pawlicki told Mastrey, "Please work on overcoming fear of taking medicines to help with debilitating headaches." *Id.* The doctor noted that Dr. Rorick had diagnosed claimant's condition as tension headache and not migraine. *Id.* Dr. Pawlicki planned to refer the patient for neurocognitive testing.[2] *Id.*

At an April 9, 2014, follow-up appointment, Mastrey reported to Dr. Pawlicki that he continued to have headaches, but he had been using Motrin, "which helps in about an hour or two." (R. 10, tr., at 295.) The claimant reported that he tried [I]mitrex "just one time which helped headache but caused excessive sweating." *Id.* Mastrey reported he used Motrin, "that keeps the headache from becoming a full

---

[2] The evidence of record does not contain direct evidence of such an appointment. However, on October 15, 2014, Dr. Pawlicki noted, "completed neurocognitive study with Dr. Griggins that ruled out such causes as early dementia, depression, adhd, or seizures." (R. 10, tr., at 403; *see generally id.*, at 23.)

blown migraine." *Id.* Dr. Pawlicki repeated his recommendation that claimant take four ibuprofen (200 mg each) for his headaches, with Imitrex. *Id.* at 298.

Mastrey was examined by a state agency consultant, Adi A. Gerblich, M.D., on May 28, 2014. (R. 10, tr., at 266-271.) Dr. Gerblich found that claimant "might be a candidate for physical therapy," but assessed "no limitations for sedentary activity." *Id.* at 267.

On July 18, 2014, Dr. Pawlicki provided a medical report on claimant, stating that he had treated claimant beginning on April 26, 2013, and most recently on July 9, 2014. (R. 10, tr., at 387-388.) Dr. Pawlicki diagnosed Mastrey with migraine headaches, or chronic tension headache; sleep apnea; lumbar spondylosis; and hypertension. *Id.* at 388. Mastrey continued to follow up with Dr. Pawlicki periodically over the next several months as well. *See, e.g., id.*, at 403, 424, 440-446, 447-451.

During a January 19, 2015, appointment, Mastrey reported to Dr. Pawlicki that he had not taken his main medications in two months. (R. 10, tr., at 425.) He was not sure if his headaches were any better "since he entirely avoids all concentration which triggers headaches." *Id.* The claimant reported using Motrin and lying down, which helps his headaches. *Id.*

<u>Opinion Evidence</u>

Dr. Pawlicki completed two medical source statements on Mastrey's physical capacity. The first was dated August 20, 2014 (R. 10, tr., at 396-397) and the second

was on May 26, 2015. (R. 10, tr., at 433-434.) These opinions will be discussed more fully below.

On initial review, state agency physician Gerald Klyop, M.D., completed a physical residual functional capacity assessment on July 1, 2014. (R. 10, tr., at 102-103.) Dr. Klop opined that Mastrey was limited to lifting and carrying fifty pound occasionally, and twenty-five pounds frequently. *Id.* at 102. The claimant was capable of standing, walking, or sitting for about six hours of an eight-hour workday. *Id.* The doctor opined that the claimant had unlimited ability to push or pull, other than as stated "for lift and/or carry." *Id.* The claimant could frequently climb ramps or stairs, and occasionally climb ladders, ropes or scaffolds. *Id.* at 103. He could frequently stoop or crawl, and his ability to balance, kneel, or crouch was unlimited. *Id.* Dr. Klyop found no need for manipulative, visual, communicative or environment restrictions. *Id.*

On reconsideration, state agency physician Stephen Sutherland, M.D., completed a physical RFC assessment on August 26, 2014. (R. 10, tr., at 113-115.) Dr. Sutherland adopted the same exertional limitations that Dr. Klyop had assessed. *Id.* at 113. Dr. Sutherland's postural limitations differed, in that he assessed that Mastrey could never climb ladders, ropes or scaffolds, and occasionally climb ramps and stairs, due to his migraines with vertigo. *Id.* at 113-114. Dr. Sutherland also found no need for manipulative, visual, or communicative restrictions, but found that claimant should avoid concentrated exposure to noise

and hazards such as unprotected heights or dangerous moving machinery, again due to his migraines with vertigo. *Id.* at 114.

## IV.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in his August 29, 2016, decision:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

> 2.  The claimant has not engaged in substantial gainful activity since November 27, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

> 3.  The claimant has the following severe impairments:  tension and/or migraine headaches, lumbar degenerative disc/joint disease, and obesity (20 C.F.R. 404.1520(c)).

> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except he should never climb ladders, ropes, or scaffolds; he can occasionally climb ramps or stairs; he can frequently stoop and crawl; he should avoid concentrated exposure to noise; and he should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.

> 6.  The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

> 7.  The claimant was born on ***, 1955, which is defined as an individual of advanced age, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching retirement age (20 C.F.R. 404.1563).

> 8.  The claimant has at least a high school education and is able to communicate in English  (20 C.F.R. 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from November 27, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

(R. 10, tr., at 22-24, 27-29.)

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. § 404.1520(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R.

§ 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *DeLong v. Commissioner*, 748 F.3d 723, 726 (6th Cir. 2014); *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VII. ANALYSIS

### A. Treating Physician's Opinions

Mastrey first argues that the ALJ "erred in the amount of weight that was granted to the treating physician opinions." (R. 13, PageID #: 505, 515-518.) He contends that the ALJ erred by giving little weight to the opinions of his treating physician, Dr. Pawlicki, and instead giving great weight to the opinion of non-examining physicians. *Id.* at 515.

It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[3] *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often best equipped to provide a complete picture of the individual's health and treatment history. *Id.*; 20 C.F.R. § 404.1527(c)(2). The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)).

Social Security regulations require the ALJ to give good reasons for discounting evidence of disability submitted by the treating physician(s). *Blakley,*

---

[3] Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017. 82 Fed. Reg. 5844-5884 (Jan. 18, 2017). Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision.

581 F.3d at 406; *Vance*, 2008 WL 162942, at *3.  Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating physician's opinion, and the reasons for that weight.  *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Winning v. Commissioner*, 661 F.Supp.2d 807, 818-819 (N.D. Ohio 2009) (quoting SSR 96-2p).

The ALJ has the responsibility for reviewing all the evidence in making his determinations.  20 C.F.R. § 404.1527(e)(2).  An ALJ is required to evaluate all medical opinions, regardless of source, unless an opinion is a treating source's opinion entitled to controlling weight.  *Smith*, 482 F.3d at 875 (ALJ must evaluate each medical opinion in the record); *Walton v. Commissioner*, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. 1999) (TABLE, text in WESTLAW) (per curiam); 20 C.F.R. § 404.1527(c).  The ALJ must then determine how much weight to give to each opinion.  *Id.*

State agency doctors are considered highly-qualified experts in disability evaluation, and the ALJ must consider their evidence.  20 C.F.R. §§ 404.1513a(b)(1); 404.1527(e).  "An administrative law judge may give more weight to the opinions of examining or consultative sources where the treating physician's opinion is not well-supported by the objective medical records."  *Dyer v. Social Sec. Admin.*, No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing *Gayheart*, 710 F.3d at 376, 379-380).  The ALJ will also consider any statements that have been

provided by medical sources, whether or not based on formal medical examinations. 20 C.F.R. § 404.1545(a)(3).

The claimant argues that the ALJ erred in giving little weight to the opinions of the treating physician, Dr. Pawlicki. (R. 13, PageID #: 515.) Dr. Pawlicki completed two medical source statements on Mastrey's physical capacity. (R. 10, tr., at 396-397.) The doctor's first medical source statement opined, on August 20, 2014, that Mastrey was limited to lifting and carrying twenty pound occasionally and ten pounds frequently. *Id.* at 396. He was limited to standing or walking a total of two hours per workday, and thirty minutes without interruption. *Id.* There were no limits on his ability to sit for eight hours without interruption. *Id.* The doctor opined that the claimant could occasionally balance, but rarely climb, stoop, crouch, kneel or crawl. *Id.* Mastrey could occasionally reach, push, pull, and perform gross manipulation, and he could frequently perform fine manipulation. *Id.* at 397. The doctor stated that low back pain and lumbar spondylosis supported the assessment of the foregoing limitations. *Id.* at 396-397. Dr. Pawlicki found no need for environment restrictions, a cane, or leg elevation. *Id.* at 397.

Dr. Pawlicki opined that Mastrey experienced severe pain, from migraine headaches, that would interfere with concentration, take the claimant off task, and cause absenteeism. (R. 10, tr., at 397.) The doctor stated that Mastrey would require additional unscheduled rest periods, outside of the norm, of two to four hours on an average day, to alleviate his headaches. *Id.*

Dr. Pawlicki completed a second medical source statement on claimant's physical capacity on May 26, 2015. (R. 10, tr., at 433-434.) A few of Mastrey's limitations were eased, namely, the doctor now found that Mastrey could frequently reach, and perform fine and gross manipulation, and he could occasionally push or pull. *Id.* at 434. Although Mastrey was still capable of sitting for eight hours without interruption, the doctor stated that he needed to be able to alternate positions between sitting, standing, and walking, at will. *Id.* at 433-434. The doctor also opined that claimant would require additional unscheduled rest periods of four hours on an average day, or 50% of the workday, to treat his migraine headaches. *Id.* at 434.

On August 20, 2014, Dr. Pawlicki also completed a medical source statement regarding claimant's mental capacity. (R. 10, tr., at 398-399.) The statement found claimant's mental capacities to be unlimited, for the most part. *Id.* The doctor opined, however, that Mastrey would rarely be able to maintain attention and concentration for extended periods of two hour segments, that he would rarely be able to deal with work stress, and rarely be able to complete a normal workday and work week without interruption from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length or rest periods. *Id.* at 398. Although the doctor underlined the word "psychologically," he added "due to headaches," a physical, rather than psychological, symptom. *Id.* The doctor identified the diagnosis and symptoms that supported these limitations as "Patient

has headaches and extreme fatigue from OSA [obstructive sleep apnea] that are triggered by concentrated work on computer or driving." *Id.* at 399.

On May 26, 2015, Dr. Pawlicki completed a second medical source statement on Mastrey's mental capacity that assessed the same limitations. (R. 10, tr., at 431-432.)

The ALJ's decision assessed Dr. Pawlicki's opinions as follows:

> Limited weight is also given to two medical source statements prepared by Dr. Pawlicki on August 20, 2014, and May 26, 2015. In both reports, the doctor opined that the claimant was limited to essentially sedentary work, required multiple manipulative limitations to account for the effects of his lumbar degeneration, and would need at least two hours of rest breaks during the course of a typical workday. This is again inconsistent with the record as a whole, and the doctor's own repeated observations that the claimant presented for his examinations in no acute distress, with no apparent sensory or musculoskeletal deficits, and was able to deal with his symptoms by taking simple over-the-counter medications, as well as the fact that at no point has Dr. Pawlicki actually observed the claimant having a migraine. The undersigned gives considerable weight, however, to two reports prepared by the doctor on the same dates outlining the claimant's mental limitations. The doctor actually stated here that the claimant only rarely suffered mental limitations "due to [headaches and] fatigue from [obstructive sleep apnea]," but that he could otherwise constantly perform almost all regular mental activities. The undersigned finds that this is actually consistent with the record and the modest symptoms observed by the doctor in his examination reports.

(R. 10, tr., at 27, internal citations omitted.) In addition, the ALJ gave "considerable weight" to the opinions of the medical consultants, Dr. Klyop and Dr. Sutherland, whose restrictions the ALJ determined to be consistent with the record. *Id.* at 26.

The claimant argues that the medical records support the limitations Dr. Pawlicki assessed. (R. 13, PageID #: 517-518.) He contends that the evidence supports limitations based on his back pain and lumbar spondylosis. *Id.* at 517. The ALJ recognized that claimant complained of chronic pain, but noted that the record indicated that "it generally improved with the use of over-the-counter medication." (R. 10, tr., at 25, citing *id.*, at 321.) The ALJ also pointed to the consultative medical exam that Dr. Gerblich performed on May 28, 2014, where the doctor found claimant maintained full strength and range of motion in all extremities, with no notable discomfort or loss of balance, and a normal gait. *Id.* at 25, citing *id.*, at 266-271. In addition, the ALJ's decision noted that an x-ray of the lumbar spine taken on May 28, 2014, showed only mild degenerative changes. *Id.*, citing *id.*, at 272. Moreover, the ALJ indicated that claimant exhibited no outward distress and had normal neurological function, during several examinations in 2014 and 2015. (R. 10, tr., at 26, citing *id.*, at 425-428, 440-446, 447-451.)

Mastrey also argues that the evidence supports limitations based on his severe headaches that interfered with his ability to concentrate. (R. 13, PageID #: 517.) The ALJ recognized claimant's ongoing complaints of headaches, noting as well that Mastrey found some relief with ibuprofen (R. 10, tr., at 26), but was not compliant with his doctor's recommendations that he take appropriate prescription medication to alleviate the migraine symptoms.[4] (R. 10, tr., at 25, citing *id.*, at 295, 297-298, 299, 303, 308-310.)

---

[4] Mastrey's failure to follow the treatment prescribed by Dr. Pawlicki is a proper consideration in the ALJ's determination of whether Mastrey is found to be disabled. *See* R. 10, tr., at 26; *see,*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. Although Mastrey reviews the evidence which he believes compels a different conclusion than that reached by the ALJ (R. 13, PageID #: 516-518), the ALJ's assessment of Dr. Pawlicki's opinion follows a lengthy discussion of the medical evidence of record (R. 10, tr., at 22-23, 24-27), and is supported by substantial evidence.

Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c). Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in his decision. *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011). The claimant contends that the ALJ did not take into consideration the length of the treatment relationship, the frequency of examinations, and the nature and extent of the treatment relationship. (R. 13, PageID #: 518; *see generally* 20 C.F.R. § 404.1527(c)(2)).

*e.g.*, *Ball v. Secretary, HHS*, 931 F.2d 893, 1991 WL 66051, at *4 (6th Cir. 1991) (TABLE, text in WESTLAW) (claimant was not taking his medication); *Johnson v. Secretary, HHS*, 794 F.2d 1106, 1111 (6th Cir. 1986) (impairment that can be remedied by treatment cannot support a finding of disability); *Hudgines v. Colvin*, No. 1:13CV2411, 2015 WL 410697, at *12 (N.D. Ohio Jan. 29, 2015) (when claimant does "not follow prescribed treatment .... without good reason" he will not be found disabled, quoting 20 C.F.R. § 404.1530); *Square v. Commissioner*, No. 1:13CV541, 2014 WL 1237792, at *8 (N.D. Ohio Mar. 25, 2014).

The ALJ's decision demonstrates, in giving weight to Dr. Pawlicki's opinions, that the ALJ considered the treatment relationship (specifically noting "primary physician Matthew Pawlicki, M.D.," R. 10, tr., at 25), and by citing treatment records from April 2013 through November 2015, recognized the length, the nature and extent of the relationship (R. 10, tr., at 25-26). *See generally* 20 C.F.R. § 404.1527(c). The ALJ considered the proper factors in determining the appropriate weight to assign to Dr. Pawlicki's opinions. *Francis*, 2011 WL 915719, at *3; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 404.1527(c).

After fully considering the arguments of both parties (R. 13 and 15), and the evidence in the record, the court finds that the ALJ provided good reasons for not providing controlling weight to the opinion of Dr. Pawlicki. *See, e.g.*, *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. The ALJ determined that Dr. Pawlicki's RFC assessment was inconsistent with other substantial evidence in the medical record, and identified the evidence on which that determination was based. (R. 10, tr., at 25-27.) *See generally* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Gayheart*, 710 F.3d at 376; *Hall*, 2005 WL 2139890, at *5. The good reasons that the ALJ provided for the weight assigned to Dr. Pawlicki's opinion were supported by substantial evidence in the record, and are sufficiently specific to make clear the weight assigned to the treating physician's opinion, along with the reasoning for that weight. *See* *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407; *Hall*, 2005 WL 2139890, at *5; *Winning*, 661 F.Supp.2d at 818-819.

The court, therefore, finds that the ALJ's decision—concerning the weight given to Dr. Pawlicki's opinion—is supported by good reasons and by substantial evidence in the record.

## B.  Analysis of Pain

Mastrey presents a second legal issue for review:  "Whether the Administrative Law Judge erred in failing to perform a proper pain analysis."  (R. 13, PageID #: 505, 518-520.)  The claimant contends that the ALJ erred by not conducting a proper pain analysis of two severe impairments—headaches and lumbar degenerative joint disease.  *Id.* at 518.

The claimant's statements regarding "pain or other symptoms will not alone establish that [he is] disabled...."  *Walters,* 127 F.3d at 531 (quoting 20 C.F.R. § 404.1529(a)).  The Sixth Circuit has established a two-part test to evaluate complaints of disabling pain when the pain forms a basis of the claimant's disability claim.  *Rogers v. Commissioner,* 486 F.3d 234, 247 (6th Cir. 2007); *see also* SSR 16-3p, 2017 WL 5180304, at *3-*4 (Oct. 25, 2017).[5]  First, the ALJ must determine whether there is "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms."  *Id.* (*citing* 20 C.F.R. § 416.929(a)).

---

[5]  Social Security Ruling 16-3p superseded SSR 96-7p, and is to be used by ALJs when making determinations and decisions on or after March 28, 2016.  SSR 16-3P, 2017 WL 5180304, at *1. The decision here was dated August 29, 2016.  (R. 10, tr., at 29.)

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Social Security Ruling 16-3p lists the factors relevant to the ALJ's determination at this step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain, and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *7-*8. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant's allegations of pain "based on a consideration of the entire case record." *Rogers*, 486 F.3d at 247.

Mastrey concedes that the first test was satisfied; the ALJ determined that his headaches and lumbar degenerative disease were severe impairments. (R. 13, PageID #: 519, citing R. 9, tr., at 22.) He contends, however, that the ALJ failed to consider all the evidence in his analysis of claimant's pain. *Id.* Mastrey asserts that "the ALJ failed to consider what other symptoms were associated with the headaches," such as nausea, vertigo and related symptoms. *Id.* A review of the ALJ's decision shows that the ALJ considered symptoms that claimant associated

with the headaches. In particular, the ALJ considered Mastrey's allegations "that his headaches caused nausea and vertigo." (R. 10, tr., at 24.)

Mastrey also contends that "the ALJ failed to consider aggravating factors," such as bright lights, prolonged concentration, computer work, tension, and driving. (R. 13, PageID #: 519.) A review of the ALJ's decision shows that the ALJ considered Mastrey's claims that his headaches "could be triggered by activities requiring concentration or fine motor skills." (R. 10, tr., at 24.) The ALJ also noted Dr. Rorick's finding that claimant's headaches were due to tension. *Id.* at 25. The ALJ discussed Dr. Pawlicki's records that claimant's "migraines occurred primarily in connections with activities requiring concentration" and the use of a computer. *Id.* at 25-26. The decision referred to Mastrey's testimony:

> . . . that his migraines could be triggered by even modest physical activity such as walking, driving, lifting weights under 20 pounds, and by fine motor skills, yet he repeatedly admitted to Dr. Pawlicki that his headaches were controlled simply by not using computers and made tolerable by simple over-the-counter medication.

(R. 10, tr., at 26.) The aforementioned demonstrates that the ALJ's decision considered pertinent aggravating factors.

Finally, Mastrey argues that the ALJ failed to recognize that Dr. Pawlicki stated that claimant's headaches were debilitating, and would interfere with his ability to work. (R. 13, PageID #: 519, citing R. 9, tr., at 301, 310, 319.) Claimant's contention is not well-taken. The ALJ's decision considered Dr. Pawlicki's treatment records and the impact of the reported headaches. *See, e.g.,* R. 10, tr., at 25-26. For example, the ALJ's decision indicated on April 9, 2014, "doctor

[Pawlicki] noted no abnormal physical findings on examination and again urged [claimant] to take his medication as prescribed: 'please work on overcoming fear of taking medicines to help with debilitating headaches.'" (R. 10, tr., at 22, citing Exhibit 7F, p. 14-15) (which is R. 9, tr., at 296-97)).

> In addition, the ALJ determined:
>
> Although the evidence establishes underlying medical conditions capable of producing some pain or other limitations, the substantial evidence of record does not confirm disabling pain or other limitations arising from those impairments, nor does it support a conclusion that the objectively determined medical conditions were of such severity that they could reasonably be expected to give rise to disabling pain or other limitations.

(R. 10, tr., at 26.)  The ALJ found that the evidence established that the claimant "experienced no greater than mild to moderate functional limitations" upon his ability to work.  *Id.*  The court finds that the ALJ's decision concerning the impact of Mastrey's allegedly disabling pain is supported by substantial evidence in the record.

## C. RFC Assessment

Claimant's final challenge to the ALJ's decision addresses whether substantial evidence supports the ALJ's RFC assessment.  (R. 13, PageID #: 505, 520-521.)  Mastrey contends that "it does not appear that there were any limitations with respect to the headaches."  *Id.* at 520.  The claimant asserts that his headaches were worse with noise, light, and stress, that they interfered with his ability to concentrate, and he was unable to perform any computer work.  *Id.* at 520-521.

The ALJ has the responsibility for reviewing all the evidence in making his determinations. 20 C.F.R. § 404.1527(e)(2). Although the ALJ reviews and considers all the evidence before him, the responsibility for assessing the claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c).

A claimant's RFC is defined as the most the claimant can do, despite the limitations caused by his physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). The ALJ must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Commissioner*, No. 00-4200, 2002 WL 343402, at *5 (6th Cir. Mar. 4, 2002) (per curiam) (quoting *Bencivengo v. Commissioner*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000) (slip op.)).

While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single limitation considered by Dr. Pawlicki. *See, e.g.*, *Atkinson v. Astrue*, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29, 2010) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996); *Thacker v. Commissioner*, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004) (ALJ need not discuss every piece of evidence in the record). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, No. 04-5021,

2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

As the Commissioner points out (R. 15, PageID #: 537), while the ALJ did not give controlling weight to Dr. Pawlicki's opinions in formulating claimant's RFC, the ALJ did find that claimant had work-related limitations supported by the record. The ALJ limited Mastrey to medium work, with no climbing of ladders, ropes, or scaffolds, and only occasional climbing of ramps or stairs. (R. 10, tr., at 24.) Moreover, in consideration of claimant's migraine headaches and related vertigo, the RFC provided that he should avoid concentrated exposure to noise, and to hazards such as dangerous machinery and unprotected heights. *Id.* The ALJ found that the claimant's headaches were less severe, and did not require stricter limitations, because the ALJ found that relief for the symptoms could be obtained by simple over-the-counter medications. *Id.* at 26. Further, the ALJ determined the fact that claimant refused specific migraine medications "strongly suggests that he did not actually perceive his symptoms to be so severe as to warrant following his doctor's orders." *Id.* at 26.

The RFC adopted by the ALJ was consistent with the limitations assessed by the agency physician Dr. Sutherland, who opined that Mastrey could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and, should avoid concentrated exposure to noise and hazards such as unprotected heights or dangerous moving machinery, restrictions due to his migraines with vertigo. (R. 10, tr., at 113-114.) Thus, the RFC contained limitations with respect to claimant's

headaches.  It is proper for the ALJ to rely on the opinion of a non-examining physician, where the physician has reviewed all the medical evidence and his proposed restrictions are consistent with the record as a whole, as the ALJ found here.  (R. 10, tr., at 26); *see generally* Dyer, 2014 WL 2609548, at \*5; Rudd v. Commissioner, No. 12-6136, 2013 WL 4767020, at \* 9 (6th Cir. Sept. 5, 2013) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)).

The court finds that record evidence is sufficient for a reasonable mind to accept as adequate support for the decision.  Therefore, the ALJ's determination is supported by substantial evidence.  *See* Blakley, 581 F.3d at 406; *Wright*, 321 F.3d at 614.

## VIII.  CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence.  The record evidence as discussed in the ALJ's decision is such that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination.  The decision of the ALJ is AFFIRMED.

IT IS SO ORDERED.


s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge


Date:  September 20, 2018